IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| VICTOR LEE WHITE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 2:04-CV-0004 |
| | § | |
| JO ANNE B. BARNHART, | § | |
| Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

**REPORT AND RECOMMENDATION**
**TO AFFIRM THE DECISION OF THE COMMISSIONER**

Plaintiff VICTOR LEE WHITE brings this cause of action pursuant to 42 U.S.C. § 405(g), seeking review of a final decision of defendant JO ANNE BARNHART, Commissioner of Social Security (Commissioner), denying plaintiff's applications for disability benefits and supplemental security income benefits (SSI). For the reasons hereinafter expressed, the undersigned United States Magistrate Judge recommends the Commissioner's decision finding plaintiff not disabled and not entitled to benefits be AFFIRMED.

I.
PROCEEDINGS

On January 1, 2002, plaintiff filed an application for Disability Insurance Benefits alleging he became unable to work because of a disabling condition on October 12, 2001. (Tr. 106-08). As illnesses, injuries or conditions limiting his ability to work, plaintiff alleged "broken hip, heart." (Tr.

125). Plaintiff alleged his conditions limit his ability to work by stating, "limp with hip when walk, heart." Plaintiff averred his conditions first bothered him October 12, 2000, but that he was able to continue working by using "blocks, anything to help make easier." Petitioner stated his condition rendered him unable to work on April 15, 2001, and that he stopped working all together on August 20, 2001 when he was laid off by his employer. Plaintiff noted he completed the 12th grade in school (Tr. 131),[1] and identified past work in a lumber yard, building fences, operating an oil rig, installing and repairing irrigation systems, and as an oil field service mechanic. (Tr. 126, 134-41, 161-62). Plaintiff filed an application for SSI on February 22, 2002. (Tr. 341-45). At the time he filed his applications, plaintiff was 49-years-old.

On January 23, 2002, plaintiff was interviewed at the SSA Field Office for completion of a Disability Report. The interviewer did not observe plaintiff having any difficulty with sitting, standing, walking, or using his hands. The SSA field office also recommended an onset date of January 1, 2002 for SSI benefits. (Tr. 120).

On May 21, 2002, the SSA, identifying plaintiff's primary diagnosis as "acetabular fracture, old" and secondary diagnosis as "essential hypertension," denied plaintiff benefits determining plaintiff's condition was not severe enough to keep him from working.[2] (Tr. 76, 78-84; 346, 347-53). On May 31, 2002, plaintiff, acting pro se, requested the SSA reconsider its initial determination, explaining he did not agree with the determination because he is "still disabled" and, on "some

---

[1] At the hearing, plaintiff clarified that he "went to 12th" but did not graduate. (Tr. 32).

[2] In denying disability benefits, the SSA explained, "We have determined that your condition is not severe enough to keep you from working. . . . You said you were disabled because of [a] hip problem and heart condition. The reports in your file indicate that the combination of your conditions limits you to lesser exertional job duties. Although you said you have many restrictions, the evidence does not show that your ability to perform basic work activities is as limited as you indicated. Your overall medical condition may cause some restrictions. However, based on your description of your past job as a rig operator, this condition does not prevent you from performing that work." (Tr. 84, 353).

mornings . . . can't get up out of bed due to the pain in [his] hip." (Tr. 85, 149). On August 29, 2002, the SSA, identifying plaintiff's primary diagnosis as "fractures of acetabular" and his secondary diagnosis as "history of seizures," denied plaintiff benefits upon reconsideration.[3] (Tr. 77, 87-90; 354, 355-57).

On September 6, 2002, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), explaining he disagreed with the determination on reconsideration because he had other doctors that needed "to be contacted about medical records." (Tr. 91). Plaintiff averred his condition had worsened in that he was having problems walking and sometimes could not "get out of bed." (Tr. 156). On October 16, 2002, counsel was appointed to represent plaintiff. (Tr. 23). On January 27, 2003, the ALJ conducted an administrative hearing in this case. (Tr. 24-75). On March 18, 2003, the ALJ rendered an unfavorable decision, finding plaintiff not disabled at any time through the date of the decision. (Tr. 16-22).

In his decision, the ALJ acknowledged plaintiff's allegation that he became disabled on October 12, 2001 due to (1) chronic hip pain, status-post hip fracture, (2) chronic low back pain, (3) a seizure disorder, and (4) coronary artery disease. (Tr. 20). The ALJ summarized his review of the plaintiff's medical record as follows:

> The record reflects that [plaintiff] sustained a hip fracture from a fall on the job in October 2000. His fracture was nondisplaced. He was treated conservatively with medications and physical therapy and did not require surgery. The record establishes that [plaintiff] did very well in physical therapy, and by March 28, 2001 he reported that he did not need to use a cane at home any more. He was released from that program on April 13, 2001 because his doctor had released him to return to work. Just

---

[3] In again denying disability benefits, the SSA explained, "We have determined that your condition is not severe enough to keep you from working. . . . You said you were disabled because of a fractured hip, heart condition and seizures. However, your current symptoms are not severe enough to be considered disabling under Social Security guidelines. Although you said you have these symptoms, the evidence does not show that your ability to perform basic work activities is as limited as you indicated. Although a return to work done in the past is not possible, your condition does allow other less demanding work." (Tr. 90, 357).

> two days previously, [plaintiff] had reported that his hip pain was tolerable.
>
> Even so, [plaintiff] has continued to complain of disabling hip pain. During his consultative clinical examination performed on July 31, 2002, he demonstrated an abnormal gait. He was unable to bend over to touch his toes, and he complained of pain on motions of his hip. However, he was able to rise from a chair without any difficulty. On September 16, 2002, [plaintiff] reported to his doctor that he was having severe bilateral hip pain and low back pain, and occasional numbness in his legs. His examination at that time found full strength in his legs, his deep tendon reflexes were present and equal, and his neurological condition was normal. X-rays of [plaintiff's] hip taken on September 18, 2002 revealed only mild osteoarthritis. X-rays of his lumbar spine taken at the same time revealed only mild early osteoarthritis with no disc space narrowing. [Plaintiff] has continued to see his doctor on an irregular, occasional basis. His doctor has not recommended any particular restrictions on his activities.

(Tr. 21). The ALJ found plaintiff's seizure disorder and coronary artery disease were not severe impairments because they did not present more than a minimal impact on his capacities for work related functioning. (Tr. 21-22). The ALJ also found that during the period under review, plaintiff had no impairment or combination of impairments of such severity as to medically meet or equal any condition described in Appendix 1, Subpart P, Regulations No. 4. (Tr. 20). The ALJ noted he specifically reviewed section 1.00 of the Listings.

The ALJ also determined plaintiff's "reports and testimony of symptoms and functional restrictions [were] not supported by the evidence overall in the disabling degree alleged, and therefore lacked credibility." The ALJ explained that even though plaintiff alleged a seizure disorder, he drives his car without restrictions. The ALJ also noted plaintiff testified he had not experienced a seizure since 1986 or 1987, but that he reported to the consultative examiner that he had last had a seizure in 1996. The ALJ also found plaintiff's allegations of several "heart attacks" and "severe limiting coronary artery disease" were not substantiated by the record. The ALJ found that although plaintiff has hypertension, for which he is under treatment, the record does not indicate plaintiff "has ever had

any significant cardiac event" and plaintiff's doctor has stated he has "minimal coronary artery disease."

The ALJ also found plaintiff's testimony that he is unable to sit, stand or walk for significant periods of time due to hip and low back pain was not supported by the evidence overall. The ALJ specifically noted:

> [H]is records indicate that his hip fracture was nondisplaced, that he did not require surgery, and that he successfully completed his physical therapy program. The claimant's x-rays reveal that his hip arthritis is mild. On every review his physical therapist wrote that [plaintiff] was doing well and making good progress, and [plaintiff] consistently reported that the exercises were increasing his endurance and decreasing his pain. [Plaintiff] was discharged from physical therapy in April 2001, after his doctor released him to return to work. At that time [plaintiff] was reporting that his hip pain was tolerable. Moreover, [plaintiff]'s degenerative back condition is mild and early, and the only findings on clinical examination relative to his complaints of back pain were tenderness to palpation by [plaintiff]'s own report.

(Tr. 20).

The ALJ determined plaintiff retained the residual functional capacity (RFC) to perform "exertionally light work activities which do not involve climbing stairs or ramps more than just occasionally, which do not require climbing of ladders, or working with ropes or scaffolding, and which allow the worker to use a cane for walking as necessary." (Tr. 20-21). The ALJ found nonexertional factors had not significantly eroded plaintiff's ability to perform light work, that his conclusion was consistent with the evidence and with the opinions of the medical consultants, and was not inconsistent with the opinion of any treating physician. (Tr. 21).

The ALJ determined plaintiff was unable to perform the requirements of any category of his past relevant work. The ALJ noted that during the period under review, plaintiff had been a "younger individual" and a person "closely approaching advanced age." He further noted plaintiff has a 12th grade education. The ALJ found VE testimony established there were other jobs that exist in

significant numbers in the regional and national economies which plaintiff is able to perform, given his age, education, work experience, and RFC. The ALJ noted examples of such other work as the unskilled jobs of shipping and receiving clerk and parking lot attendant. The ALJ noted the VE's opinion that such jobs are light in nature, require only occasional climbing of stairs or ramps, do not require climbing ladders or working on scaffolding, and allow the use of a cane for standing and walking. The ALJ thus concluded plaintiff was not disabled under the standards of the Social Security Act at any time through the date of his decision. (Tr. 22).

On May 14, 2003, plaintiff, represented by counsel, requested review of the ALJ's decision. (Tr. 13-15). Upon the Appeals Council's denial of plaintiff's request for review on November 14, 2003, the ALJ's determination that plaintiff was not under a disability became the final decision of the Commissioner. (Tr. 8-10). Plaintiff now seeks judicial review of the denial of benefits pursuant to 42 U.S.C. § 405(g).

II.
STANDARD OF REVIEW

In reviewing disability determinations by the Commissioner, this court's role is limited to determining whether substantial evidence exists in the record, considered as a whole, to support the Commissioner's factual findings and whether any errors of law were made. *Anderson v. Sullivan*, 887 F.2d 630, 633 (5th Cir. 1989). Substantial evidence is "such relevant evidence as a responsible mind might accept to support a conclusion. It is more than a mere scintilla and less than a preponderance." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). To determine whether substantial evidence of disability exists, four elements of proof must be weighed: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) claimant's subjective evidence of

pain and disability; and (4) claimant's age, education, and work history.  *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991) (citing *DePaepe v. Richardson*, 464 F.2d 92, 94(5th Cir. 1972)).  If the Commissioner's findings are supported by substantial evidence, they are conclusive, and the reviewing court may not substitute its own judgment for that of the Commissioner, even if the court determines the evidence preponderates toward a different finding.  *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980).  Conflicts in the evidence are to be resolved by the Commissioner, not the courts, *Laffoon v. Califano*, 558 F.2d 253, 254 (5th Cir. 1977), and only a "conspicuous absence of credible choices" or "no contrary medical evidence" will produce a finding of no substantial evidence.  *Hames v. Heckler*, 707 F.2d at 164.  Stated differently, the level of review is not *de novo*.  The fact that the ALJ <u>could</u> have found plaintiff to be disabled is not the issue.  The ALJ did not do this, and the case comes to federal court with the issue being limited to whether there was substantial evidence to support the ALJ decision.

## III.
## MERITS

Plaintiff's brief in support of his application appears to present the following issues for review:

1. Whether the ALJ erred in determining plaintiff is not disabled under the Grids; and

2. Whether the ALJ erred in determining plaintiff did not have a listed impairment.

The ALJ made the determination that plaintiff is not disabled at Step Five of the five-step sequential analysis.  Therefore, this Court is limited to reviewing only whether there was substantial evidence in the record as a whole supporting a finding that plaintiff retained the ability to perform other work that exists in significant numbers in the national economy, and whether the proper legal standards were applied in reaching this decision.

A.
Grids

Plaintiff contends that for purposes of a "disability evaluation," plaintiff meets the following criteria:

1. During the period of review plaintiff was a "younger individual" but at the time of ALJ's decision was 52-years-old, defined as a "person approaching advanced age";

2. Plaintiff has an 11th grade education, considered a "limited education";

3. Plaintiff's previous work was considered semi-skilled, hard work;

4. Plaintiff is unable to perform his past relevant work.

Plaintiff thus argues that, "under the 'Grids,' assuming the plaintiff's description of his ailments and condition are correct, he is 'disabled.'"

The ALJ correctly found plaintiff was a person "closely approaching advanced age" and had a limited education. (Tr. 70). The VE identified plaintiff's past work as semi-skilled. (Tr. 71). The ALJ further found plaintiff had the RFC for light work. Based on this criteria, Rules 202.11 and 202.12 of the Grids dictate a finding of not disabled.

Plaintiff, however, appears to argue that based on plaintiff's "description of his ailments and condition," he did not have the capacity to perform light work and, thus, he is disabled under the Grids.[4] This allegation can be construed as either an argument that the ALJ's credibility determination is not supported by substantial evidence or as an argument that the finding by the ALJ that he retained the RFC to perform a limited range of light work was not supported by substantial evidence.

---

[4] For plaintiff to prevail, plaintiff's contention must be that he only has the RFC for sedentary work and that the skills from his previous semi-skilled work are not transferable so as to render him disabled under the Grids. *See* R. 201.10. In a later argument in his brief, plaintiff refers to his inability to perform "medium" work. It may be that plaintiff's argument was based on a misapplication of the Grids utilizing Table 3 for claimant's with the RFC for "medium" work.

Plaintiff argues the medical records show he "has complained of left hip pain on a recurring basis," specifically noting the January 2003 notation that his left hip pain may be osteoarthritis secondary to his hip fracture. Plaintiff contends the "presence of documented recurring pain is a factor negating plaintiff's ability to perform . . . [light work]." Under 20 C.F.R. § 416.929(a), the ALJ is directed to "consider all [an individual's] symptoms, including pain, and the extent to which [an individual's] symptoms can reasonably be accepted as consistent with the objective medical evidence, and other evidence." The ALJ is not required to accept a plaintiff's statement of his limitations without question. However, an ALJ must explain his reasons for rejecting a disability applicant's complaints of pain. *Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994). This reviewing court must give deference to an ALJ's credibility determinations. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990).

Here, the ALJ properly evaluated plaintiff's subjective claims of pain under the appropriate legal standards, correctly examining plaintiff's claims in light of the countervailing medical evidence. The ALJ was aware of his need to assess plaintiff's pain symptoms and the extent to which those symptoms were consistent with the record evidence. Accordingly, the ALJ contrasted plaintiff's testimony that he experiences incapacitating hip and back pain with the medical evidence. *See Brown*, 192 F.3d at 500 (finding no abuse of discretion under the relevant regulations where the ALJ discounted the individual's pain symptoms because "every objective medical assessment revealed no physiological basis for [the individual's] pain"). Further, the objective medical evidence in the record demonstrated plaintiff could perform a range of daily activities, and the ALJ correctly took this into account in reaching his final determination. Under the deferential review standard this Court must follow, the undersigned cannot reject the ALJ's credibility determination on the facts presented, nor can this Court say that the ALJ erred in deeming plaintiff's statements lacking in credibility. Substantial evidence supports the ALJ's determination that plaintiff's "reports and testimony of

symptoms and functional restrictions [were] not supported by the evidence overall in the disabling degree alleged, and therefore lacked credibility."

RFC measures the extent to which a claimant's impairments and related symptoms affect a claimant's capacity to do work-related activities – what a claimant can do despite his limitations. SSR 96-5p. This administrative assessment, based on the totality of the evidence, is reserved solely to the ALJ. 20 C.F.R. § 404.1527(e)(2); 404.1546. Here, the ALJ found plaintiff had the RFC to perform light work with certain exertional restrictions. The RFC finding made by the ALJ is supported by substantial evidence.

Plaintiff's minimally displaced hip fracture in October 2000 was treated with bed rest, nonweightbearing restrictions, low level pain relievers, and did not require surgery or any other type of treatment other than physical therapy. (Tr. 164-69; 239-85; 291-315; 335;). By January 4, 2001, plaintiff's pain level had improved, physical therapy was going well, and he was able to walk without a walker, and walked well with a cane. (Tr. 207). By February 2001, plaintiff could walk without a cane and had only a slight limp. (Tr. 206). Throughout March 2001, plaintiff reported only low grade pain levels to his physical therapist, tolerated his exercises well without voicing complaints of pain, was able to navigate steps without difficulty, and walk safely without an assistive device. (Tr. 225-38). Plaintiff's physician found plaintiff was doing well, reported physical therapy was helping, and that walking helped with any edema. (Tr. 206). By the end of the month, plaintiff reported he was not using his cane at home, only using it outside and on uneven surfaces. (Tr. 226). By April 2001, plaintiff was walking without a noticeable limp, his fracture was "well healed," he was doing well, and his physician found "no permanent disability." (Tr. 205). Plaintiff continued to report only low grade pain levels to his physical therapist, and tolerated his exercises well without voicing complaints of pain and, mid-month, plaintiff was discharged from physical therapy to return to work. (Tr. 219-24). After being laid off from work in June 2001, plaintiff reported "having difficulty with

some walking & lifting." (Tr. 205).

In January and March 2002, plaintiff's gait was steady with normal posture, and plaintiff reported he walked daily at work. (Tr. 172, 175, 180). In July 2002, X-rays revealed the old fracture, but found cortices otherwise intact with smooth hip joint. (Tr. 193). At a consultative examination on July 31, 2002, plaintiff has demonstrated an abnormal gait, an inability to bend over to touch his toes, and complained of pain on motions of his hip. Plaintiff, however, continued to be able to rise from a chair without any difficulty. (Tr. 191-92). By September 2002, plaintiff reported pain in his hips and occasional numbness in his legs which would come and go and which was not associated with either sitting or standing. Examination revealed only some tenderness over his lumbar area, and a moderately decreased range of motion secondary to pain in his hips. Examination revealed full strength in his legs, present and equal deep tendon reflexes, and a normal neurological condition. (Tr. 215; 338). X-rays revealed only mild early osteoarthritis and mild narrowing of joint spaces. (Tr. 218). By November 2002, plaintiff complained of left hip pain but demonstrated only very slight tenderness on internal or external rotation of his left hip, and no real pain on palpation of the area. (Tr. 214). By January 2003, plaintiff again complained of continuing left hip pain which increased with changes in the weather. Examination revealed some tenderness on internal and external rotation of the hip joint, and plaintiff's condition was assessed as pain most likely related to osteoarthritis secondary to his hip fracture. No treatment was recommended other than a continuation of his medication. (Tr. 340). After his initial bed rest, plaintiff's doctors have not recommended any particular restrictions on his activities. Plaintiff testified he only sees his doctor 2-3 times a year for pain on an irregular and occasional basis.

The ALJ's determination that plaintiff can perform light work activities which do not involve climbing stairs or ramps more than just occasionally, which do not require climbing of ladders or working with ropes or scaffolding and which allow the worker to use a cane for walking as necessary

is sufficiently supported by the medical evidence, even though inconsistent with plaintiff's testimony. Had the ALJ accepted plaintiff's subjective complaints as credible, a different result would have occurred. Here, however, plaintiff has not demonstrated the ALJ's credibility determination and his RFC finding are in error. Accordingly, plaintiff's argument that he is disabled under the Grids is without merit, and this ground should be denied.

B.
Listed Impairment

Plaintiff also appears to argue the ALJ erred because he failed to find plaintiff's hip injury met or medically equaled the listed impairment set forth under Listing 1.00 et seq. To meet a listing under 1.00 et seq. (except for Listings 1.07 and 1.08), plaintiff must show an *inability to ambulate effectively*. The *inability to ambulate effectively* on a sustained basis can be for any reason, including pain associated with the underlying impairment, but the inability to ambulate effectively must have lasted, or be expected to last, for at least twelve (12) months. Section 1.00(B)(2)(a). Section 1.00(B)(2)(b)(1) defines the *inability to ambulate effectively* as:

> [A]n extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning [] to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities.

Subsection (2) further explains that to ambulate effectively:

> [I]ndividuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment. . . . Therefore, *examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail*. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

(emphasis added).

Here, plaintiff contends he "can only walk a block and one-half, with a walker, on smooth road surface." Plaintiff further maintains he cannot "ambulate effectively" on uneven ground. Plaintiff thus appears to argue there is not adequate evidence to support the ALJ's conclusion that plaintiff does not meet the listing.

Plaintiff cannot show the ALJ's decision was in error. Although plaintiff has a prior hip injury, his impairment does not meet a listing because the evidence does not show plaintiff cannot ambulate effectively within the intent of the regulations. Plaintiff testified he did not need to use a walker anymore after he was prescribed a cane in physical therapy. (Tr. 56). Plaintiff testified he has used his cane for a year and a half and uses his cane if he goes for a walk outside of his home. (Tr. 46, 45). Plaintiff's wife testified plaintiff uses the walker in the winter when he needs to get out of bed and to walk one and a half blocks once in a while. (Tr. 60, 63, 66). The medical record does not indicate plaintiff has a medical necessity for using a walker. Moreover, using a walker "once in a while" is not sufficient for purposes of meeting the listings. Plaintiff's testimony as to his daily activities does not indicate an inability to ambulate effectively, even if plaintiff is dependent on a cane. Plaintiff's need for the assistance of a cane to permit independent ambulation due to his hip injury does not establish that plaintiff's use of the cane limited the functioning of <u>both</u> upper extremities as required by the definition of ineffective ambulation. Nor has plaintiff established a need to use two (2) canes or any of the other examples of ineffective ambulation set forth in subsection (2). There are no statements or objective findings in the medical reports of record or in plaintiff's testimony to support the functional limitations mandated by the listing. The undersigned cannot find the ALJ erred in determining plaintiff did not meet a listing, nor does the undersigned find plaintiff has established that he meets the ambulatory component of the listings. No reversible error was committed and the ALJ's finding will not be overturned on this review.

## IV.
## RECOMMENDATION

Plaintiff has not presented sufficient cause for reversal and remand. Consequently, it is the RECOMMENDATION of the undersigned United States Magistrate Judge to the United States District Judge that the decision of the defendant Commissioner finding plaintiff VICTOR L. WHITE not disabled and not entitled to a period of disability benefits be AFFIRMED.

## V.
## INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Report and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this __27th__ day of December 2006.

_____
CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE

### * NOTICE OF RIGHT TO OBJECT *

Any party may object to these proposed findings, conclusions and recommendation. In the event a party wishes to object, they are hereby NOTIFIED that the deadline for filing objections is eleven (11) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(B), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(D). When service is made by mail or electronic means, three (3) days are added after the prescribed period. Fed. R. Civ. P. 6(e). Therefore, any objections must be <u>filed</u> **on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b); R. 4(a)(1) of Miscellaneous Order No. 6, as authorized by Local Rule 3.1, Local Rules of the United States District Courts for the Northern District of Texas.

Any such objections shall be made in a written pleading entitled "Objections to the Report and

Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties.  A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court.  *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).